**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 0:25-cv-61608-MD

LYONS WEALTH MANAGEMENT, LLC,

      Plaintiff,

v.

WOLPER LAW FIRM, P.A., and
MATTHEW E. WOLPER,

      Defendant.

## <u>DEFENDANTS' MOTION FOR SANCTIONS</u>

Defendants, Wolper Law Firm, P.A. and Matthew E. Wolper, move for sanctions under Fed. R. Civ. P. 37(d) in response to the conduct of Sander Read, the designated corporate representative for Plaintiff, Lyons Wealth Management, LLC, at the May 1, 2026, deposition of same and for two anti-Semitic emails sent from Read to Wolper, who is Jewish, and Wolper's former client, who is both Israeli and Jewish, during the course of this litigation.

### STATEMENT OF FACTS

1.      This motion comes on the heels of an incomplete duly-noticed deposition of a 30(b)(6) representative of Lyons Wealth Management, LLC.

2.      On April 6, 2026, undersigned counsel conferred on deposition dates for Lyons' corporate representative or representatives in this matter, including a list of topics for the representative deposition. That same day, opposing counsel responded and stated, "May 1 works for us." *See* Email, attached as Exhibit A.

3.      On April 10, 2026, a notice of taking the videotaped deposition of Lyons' 30(b)(6) representative on May 1, 2026, was served. *See* Service Email, attached as Exhibit B.

4.      A 3-week written notice is generally considered reasonable in Florida federal courts and is more notice than the local rules require. *See* Fed. R. Civ. P. 30(b)(1) (deposing party must provide "reasonable written notice" that includes the time and place of the deposition); S.D. Fla. L.R. 26.1(h) ("[A] party desiring to take the deposition within the State of Florida of any person upon oral examination shall give at least seven (7) days' notice in writing to every other party to the action and to the deponent (if the deposition is not of a party)…"); *see also* M.D. Fla. L.R. 3.04 (party must give written notice to a deponent at least 14 days in advance).

5.      In other words, it cannot be reasonably disputed that the corporate representative of the plaintiff-company was duly noticed.

6.      On April 30, 2026, Lyons' counsel called undersigned counsel to discuss matters relating to the case, including whether the May 1 deposition would be moving forward due to outstanding discovery being owed. Later that day, at approximately 4:14 p.m., undersigned confirmed *by telephone* that the deposition would be moving forward. At no time did undersigned counsel orally cancel the scheduled deposition, nor was any notice of cancellation of the deposition served.

7.      It was evident quite early that Lyons' designated representative, Alexander "Sander" Read, was unprepared to testify. He was late to the deposition, attended the deposition in his car while driving a long-distance, and stated he would be unable to review documents.  He admitted as much:

> Q. Okay. I -- I understand that you are currently in transit, as we speak, during this deposition?
>
> A. Right.
>
> Q. Any particular reason for that?

A. Yeah. **First of all, I assumed that this wasn't going to happen today.** That we were asking for a some sort of extension and, you know, at the last minute it's like, No, it's actually happening. And I have meetings down in Vero this afternoon, so I have to get down there. But I'm here with you right now.

**Q. For what reason did you assume this wasn't going to happen today?**

**A. Because I made it really clear that I wasn't ready for this.** And, you know, a lot of the dates and things that -- that I -- that are -- I think you guys are going to ask about, I have to -- I have to confirm the dates. I hadn't had a chance to do it. We had a very busy quarter because of the -- the war and the market volatility. So this -- this, kind of, creeped up on -- on me pretty quickly.

*Deposition of Lyons Wealth Management 30(b)(6) Representative,* [8:4-24], *attached as Exhibit 1*

(**emphasis added**).

8.      As alluded to by the question above, Read admitted he was driving in his car during the deposition. *See also* Ex. 1, [22:15-16] ("I'm driving…") *and* [84:20-22] ("…as we talked about at the beginning of this deposition, you've been driving…").[1]

9.      Even so, Read responded, "Yes," when asked if he was prepared to discuss the topics of inquiry attached to the 30(b)(6) deposition notice. Ex. 1, [11:17-21].

10.     Undersigned counsel did not have much choice but to proceed with the deposition under less than ideal circumstances, since the dispositive motion deadline in this matter was May 18, 2026, up until recently. *See* Dkt. 47.

11.     Because Read was driving during the deposition, the court reporter noted *32* instances of "[Zoom distortion]" in the testimony. Ex. 1, p. 105 (noting every instance of "distortion" appearing in transcript).

---

[1]      The deposition was video recorded, so it cannot be reasonably disputed that Read was driving. During the video, the recording can clearly be seen in motion, as observed through the windows of the car. If the Court requires the recording, undersigned will conventionally file same.

12.     Even parking his car and arriving at his destination did not help matters any. At some point in the deposition, the court reporter noted that Read "spoke to people outside his vehicle, asking directions." Ex. 1, [71:20-21].

13.     Read testified that he was in "the wrong spot" and needed to move. Ex. 1, [82:7-9]; *see also* [86:9-22]

> THE WITNESS: You know, I'm trying to -- I'm in the wrong spot. I go to this -- I have to go to this other spot. **So I'm trying to find it while we talk**. But, anyway. Keep -- hold on a second. Is my video off?
>
> THE VIDEOGRAPHER: It is.
>
> MR. ERSHOCK: Yes.
>
> THE WITNESS: All right, hang on a second. Just wait a second. Okay, hang on one second. The reception here is absolutely horrible. [Zoom distortion] Come back in five minutes. This is just [Zoom distortion] a year ago.
>
> THE COURT REPORTER: Mr. Read, if you're speaking to us, you're barely discernible.

14.     Regardless of whether the spot was found, Read then went on the record to state that he would like to continue on Monday afternoon because "I can't stay on much longer." He also "thought that three hours would be long enough…" Ex. 1, [87:4-13, 87:24-88:3]. Depositions are permitted to proceed for up to 7 hours of actual examination time. *See* Fed. R. Civ. P. 30(d)(1).

15.     Notably, the deposition could not continue on the afternoon of May 4, 2026, because that is when mediation was scheduled by Court order. Dkt. 34. Read apparently learned this for the first time after undersigned questioned Read's proposal to continue the deposition.

> MR. ERSHOCK: All right. You do realize that we [are] going to mediation on Monday afternoon?
>
> THE WITNESS: It's -- no -- no, I was not aware of that.

Ex. 1, [87:14-17].

175971416.2  4

16.     When Lyons' counsel offered to take a lunch break and continue the deposition afterwards, Read stated that he was busy the rest of the day.

> MR. ERSHOCK: Well, I mean, I -- my preference is to finish the deposition. It sounds like that there -- I -- I certainly will not be able to finish it in the next 15 minutes, if that's what runs up against Mr. Read's conflict. So I guess --I -- I put it to -- put it to you and the witness: Are -- are we terminating this deposition – are you terminating this deposition?
>
> MS. KADAM: Well, no, I mean, we can also go ahead and take a lunch break during his meeting.
>
> THE WITNESS: No, no, I -- I -- **I'm busy the rest of the day. I can't -- I can't take a lunch break.** I, like I said, assumed this wasn't even happening. So anyway, I'm more than happy to get on the phone Monday morning, but I don't know --what mediation? I -- I have no idea there's a mediation on Monday that's -- I've not heard those.

Ex. 1, [89:6-22] (**emphasis added**).

17.     What's more, at the time of the deposition, May 1, 2026, was the discovery deadline. *See* Dkt. 30.

18.     Although undersigned counsel was fully prepared to proceed—indeed, that was his preference due in part to the discovery deadline—Lyons ended the deposition for the day about an hour later because Read was not returning. Ex. 1, [90:4-14; 90:24-91:6].  What is abundantly clear from Read's conduct is that he has not taken this process seriously and has little respect for this Court or the parties/attorneys involved.

19.     Independently of his deposition conduct, Read also sent two emails directly to Matt Wolper, a named defendant, without copying either counsel. If these were anodyne emails, this would not be a big deal by itself. But they're not; they're anti-Semitic.

20.     The first email was sent from "S.Read@lyonswealth.com" to Wolper (who is Jewish) and a former Lyons client (who is both Israeli and Jewish) at 11:20 p.m. on October 11, 2025, about two months after the complaint was filed and after Wolper had moved to dismiss the

complaint. *See* Dkt. 15. It contained a link to an Instagram post from "@ethanlevinsz" showing what is alleged to be footage from the ongoing Israel-Palestine hostilities, with the caption "#Never forget what Israel did to Palestine", followed by hateful and anti-Semitic comments.  A copy of the Email is attached hereto as **Exhibit 2**. As of this filing, the link is accessible.

21.     The second email was sent from the same email address to the same recipients on March 4, 2026, at 12:06 a.m. It contained a link to another anti-Semitic Instagram Reels post that has since been removed.[2]  A copy of the second Email, is attached hereto as **Exhibit 3**.

### MEMORANDUM OF LAW

Federal Rule of Civil Procedure Rule 30(b)(6) governs the depositions of corporate entities. A party seeking to depose a corporation "must describe with reasonable particularity the matters for examination." Once they do, the corporate deponent "must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf." Fed. R. Civ. P. 30(b)(6). The designated person or persons "must testify about information known or reasonably available to the organization." *Id*. The corporation must "make a good faith, conscientious effort to designate appropriate persons and to prepare them to testify fully and non-evasively about the subjects." *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 688-89 (S.D. Fla. 2012) (the "de facto Bible" governing Rule 30(b)(6) depositions).

The 30(b)(6) designee should be able to testify to matters known or reasonably available to the corporation. *Seich v. Boppy Co., LLC*, 344 F.R.D. 476, 479 (N.D. Fla. 2023) (*citing QBE Ins. Corp.*, 277 F.R.D. at 689-91). "[N]ot only must the organization designate one or more witnesses to testify on its behalf, it must prepare the witness or witnesses to 'testify about all

---

[2]     Wolper is prepared to testify as to the content of the since-removed Reel, if the Court requires it.

information known or reasonably available to the organization' for any questions that could arise under the noticed topics." *Seich*, 344 F.R.D. at 479 (citations modified). A corporation, therefore, "must prepare its designees by having them review available materials, such as fact witness deposition testimony, exhibits to depositions, documents produced in discovery, materials in former employees' files and, if necessary, interviews of former employees or others with knowledge." *Id*. (citations modified).

To figure out if a corporate deponent has met its Rule 30(b)(6) obligations, [c]ourts have examined the degree and type of effort made by the organization to prepare a witness in light of the deposition topics, and whether the organization acted 'in good faith.' " *Id*. (citations modified). "If it becomes apparent during the deposition that the designee is unable to adequately respond to relevant questions on listed subjects, then the responding corporation has a duty to timely designate additional, supplemental witnesses as substitute deponents. *Id*. (*citing QBE Ins. Corp.*, 277 F.R.D. at 690).

If the designee is not able to answer questions regarding the subject matter he was designated to testify about, the corporation has failed to satisfy its obligation to prepare the designee and may be subject to sanctions. *Seich*, 344 F.R.D. at 479-80. Indeed, "[i]f the original designated spokesman for the corporation lacks knowledge in the identified areas of inquiry, that does not become the inquiring party's problem, but demonstrates the responding party's failure of duty." *Id*. at 481 (citations modified). "[A] 30(b)(6) corporate designee's lack of preparation for a deposition may be deemed to be a failure to appear, for purposes of Rule 37(d)." *Id*. at 480 (citations modified).

If it becomes apparent during the deposition that the designee is unable to adequately respond to relevant questions on listed subjects, then the responding corporation has a duty to

timely designate additional, supplemental witnesses as substitute deponents. *QBE Ins. Corp.*, 277 F.R.D. at 690 (citations modified). The rule provides for a variety of sanctions for a party's failure to comply with its Rule 30(b)(6) obligations, ranging from the imposition of costs to preclusion of testimony and even entry of default. *Id*. The failure to properly designate a Rule 30(b)(6) witness can be deemed a nonappearance justifying the imposition of sanctions. *Id*.

There can't be any good faith dispute that Read "made it really clear that [he] wasn't ready for" the duly-noticed deposition. Ex. 1, [8:4-24]. In fact, his actions made it "really clear" that he did not believe it was worth cancelling any other obligations on a date that *Lyons selected* for his deposition. Read can be seen on video driving his car while simultaneously attempting to discharge his 30(b)(6) obligations. His Zoom connection was shoddy at best, subject to multiple interruptions over the approximately 3-hour session. And because he was driving, he could not review documents that he was being examined on, including the very Article that he claims defames Lyons. Even if this Court was inclined to view Read's conduct in personally driving a car during the deposition as a good faith attempt to discharge his responsibilities—simply positing the statement demonstrates it can't be—Read ended the deposition just before 1:00 p.m. at his insistence because he was "busy the rest of the day" and because he thought 3 hours would be "enough." Upon information and belief, Read was going to play golf, as he rolled his window down at his destination point to ask where the "clubhouse" was while dressed in a golf shirt.

Regarding Read's extra-depositional conduct, there is no place whatsoever in this litigation for what Read did.[3] The Instagram links were clearly sent directly to Wolper— bypassing *both sides'* counsels—to intimate or otherwise harass him based on his religion and heritage. In fact, there could not possibly have been any good reason to send these links to your

---

[3] Read admitted via requests for admission that he sent the emails in Exhibits 2 and 3.

litigation adversary *other than* to harass, annoy, and intimidate. Taking opposite sides in a case does not destroy tenets of basic civility. Such conduct supports Wolper's argument that this litigation is a SLAPP, not designed to recover any sort of measurable damages, but as a form of vengeance against Wolper for having the temerity to attempt to vindicate his (now former) clients' rights due to Lyons' actions. Whatever arguments or other debates Read intends to have regarding hot-button current affairs can be conducted some other time.

Fed. R. Civ. P. 37(d) allows a court to enter sanctions, on motion, where a party fails to appear for deposition after being served with proper notice. This Court should find Read's failure to adequately prepare for the duly-noticed deposition, as well as his unilateral early termination, to be "non-attendance." *Seich*, 344 F.R.D. at 480. The **mandatory** minimum penalty for non-attendance is payment of undersigned's expenses, including cost of the court reporter, the transcripts of the record, and attorney fees incurred by appearing on those dates. Fed. R. Civ. P. 37(d)(3) ("…the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."); *see Seich*, 344 F.R.D. at 482 (ordering "second 30(b)(6) deposition" at cost to corporation); *see also ARUP Labs., Inc. v. Pac. Med. Lab., Inc.*, No. 2:20-CV-00186, 2022 WL 111069, at *3 (D. Utah Jan. 12, 2022) (ordering payment of 50% of reasonable attorney fees and costs incurred in preparing for and taking the deposition as sanction for failing to adequately prepare 30(b)(6) designee).

Next, this Court should account for the inefficiencies in deposing a witness who was splitting time between driving and being deposed while, at the same time, admitting he was unprepared to answer the questions concerning the topics identified in his 30(b)(6) Notice.

175971416.2  9

Defendants request that this Court add back 1 hour to the time limit to depose Lyons' corporate representative. There were additional complications that occurred because the witness was unable to read while driving. Further, given Read's conduct during the virtual deposition, he (or whoever else is the Lyons' 30(b)(6) representative) should be required to resume the deposition in-person.

Finally, given Read's admission that he was unprepared to move forward on May 1, 2026, and his testimony that he was "busy the rest of the day" on May 1, when undersigned counsel was prepared to move forward, this Court should issue an order to show cause and require Read to testify, under oath, the circumstances as to why he scheduled other obligations on May 1, 2026, and why he could not continue the May 1 deposition, even after a 1-hour lunch break.

WHEREFORE, Defendants respectfully request this Court enter an order granting its motion for sanctions and enter an order (1) to show cause why Read should not be sanctioned for his conduct at the May 1, 2026, deposition of the Lyons Wealth Management Rule 30(b)(6) corporate representative; (2) testify, under oath, the circumstances as to why he scheduled other obligations on May 1, 2026, and why he could not continue the May 1 deposition, even after a 1-hour lunch break; (3) add one hour of deposition time back to Defendants' time limit when the deposition is reset; (4) require the Lyons representative, whoever it is, to appear in-person for the resumed deposition; and (5) awarding fees and costs to Defendant.

**Local Rule 7.1(a)(3) Conferral**

Undersigned counsel hereby certifies the efforts to confer on this motion are as follows:

- Immediately after the deposition on May 1, 2026, the parties conferred via telephone regarding continuing the deposition and a potential motion for sanctions.

- On May 6, 2026, the parties again conferred by telephone and discussed some potential sanctions that could be agreed on.

- On May 8, 2026, undersigned counsel emailed a copy of this notice and a bulleted list of potential sanctions to see where agreement could be had, as well as availability for a potential discovery hearing.

- On May 11, 2026, opposing counsel responded and requested a telephone call.

- On May 13, 2026, the parties connected via telephone call. Opposing counsel indicated that, in light of the content of direct communications from Read to Wolper during the pendency of this litigation (Ex. 2 and 3), his firm intends to withdraw from representation.

**Rule 37(d)(1)(B) Conferral**

Undersigned counsel submits that conferral under this Rule is not necessary because it does not allege a failure to answer or respond. Nevertheless, the conferral efforts are the same as under Local Rule 7.1.

Dated: May 19, 2026

/s/ *Alex B.C. Ershock*

Alex B.C. Ershock, Esq.
Florida Bar No. 100220
Alex.Ershock@lewisbrisbois.com
Jennifer A. Leto, Esq.
Florida Bar No. 1026229
Jennifer.Leto@lewisbrisbois.com

**Lewis Brisbois Bisgaard & Smith LLP**
110 SE 6th Street Suite 2600
Fort Lauderdale, FL 33301
Telephone: 954.728.1280
Facsimile: 954.728.1282
*Counsel for Defendants*

175971416.2 12